UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL J. CORTEZ,

    Plaintiff,

v.                                        Case No. 1:08-CV-315

THE PRUDENTIAL INSURANCE                HON. GORDON J. QUIST
COMPANY OF AMERICA and
STEELCASE, INC. EMPLOYEE
GROUP LIFE INSURANCE PLAN,

    Defendants.
_____/

**OPINION**

      Plaintiff, Michael J. Cortez ("Cortez"), has sued Defendants, The Prudential Insurance Company of America ("Prudential"), Steelcase, Inc. ("Steelcase"), and Steelcase, Inc. Employee Group Life Insurance Plan (the "Plan"), alleging several claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 to 1461. Presently before the Court is Prudential's Motion to Dismiss the First Amended Complaint or, in the alternative, Motion for Summary Judgment. For the reasons set forth below, the Court will grant the motion and dismiss Prudential from the case.

**I. Background**[1]

      Cortez was employed by Steelcase for approximately twenty-six years. His employment terminated in December 2004. On December 1, 2003, Cortez was seriously injured in a traffic accident. As a result, he underwent multiple surgeries and was unable to work. Cortez applied for long-term disability benefits under a group disability policy that Liberty Life Assurance Company of Boston issued to Steelcase. On November 30, 2004, Liberty granted Cortez' application and

---

[1] The facts set forth herein are taken from the First Amended Complaint.

began paying him long-term disability benefits, which continue through the present time.

Steelcase also offered its employees group life insurance under the Plan. Steelcase was both the Plan sponsor and the Plan administrator. The Plan is an ERISA plan funded by a group life insurance contract issued by Prudential. Prudential also served as the claims administrator for the Plan, in which capacity it decided eligibility for benefits. Pursuant to the insurance contract, Steelcase chose to offer a waiver of premium and continuation of coverage benefit to certain former employees, including those who were determined to be permanently and totally disabled under the Plan. The Steelcase Summary Plan Description ("SPD") covering the Plan provides that if an employee is determined to be permanently and totally disabled under the Plan, the employee's employment shall be terminated and the employee will be placed into retiree status, allowing the employee to select from available retirement plans. The SPD further provides that the Plan administrator, Steelcase, will use the group life insurance carrier, Prudential, to make the determination of the employee's permanent and total disability status. Finally, the SPD for the Steelcase Inc. Retirement Plan – a separate ERISA plan providing retirement benefits – explains the benefits to which a disabled employee placed in retiree status is entitled. Those benefits include an ongoing right to waiver of the premium for the life insurance benefit and various options concerning the payment of life insurance proceeds in the event of the employee's death.

Following Liberty's determination of permanent and total disability, Cortez applied to Prudential for continuation of his group life insurance benefits with waiver of premium. Prudential initially denied the application, but granted it on November 3, 2005, with an explanation that his claim was retroactively approved effective November 26, 2003. However, the approval ran only through August 8, 2005, because Prudential determined that there was no medical documentation that established permanent and total disability beyond that date. Cortez, through his then-attorney,

2

filed an appeal and provided additional medical documentation. Prudential denied the appeal on January 31, 2006, for the reasons set forth in its November 3, 2005, letter granting retroactive benefits.

Cortez subsequently retained his present counsel who, on June 7, 2007, sent a request to Prudential for all documents available to claimants pursuant to "'Section 104(b) of ERISA and 29 C.F.R. 2560.503(h)(2)(iii) . . .'" (1st Am. Compl. ¶ 28.) Prudential failed to respond, and Cortez' counsel made several additional requests for the documents. Finally, on December 31, 2007, Keun T. Riddick, a Senior Appeals Analyst for Prudential, sent Cortez' counsel the requested claim information, although he did not enclose a copy of the applicable Plan. Cortez filed his complaint against Prudential and the Plan on April 3, 2008, and later added Steelcase as a Defendant when he filed his First Amended Complaint on May 20, 2008.

## II. Motion Standard

Prudential has brought the instant motion as both a motion to dismiss and a motion for summary judgment. Although certain aspects of the motion may be properly treated as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court will treat the motion as a motion for summary judgment under Rule 56 based upon Prudential's submission of matters outside the pleadings, which the Court will consider in addressing the motion. Fed. R. Civ. P. 12(d).

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may

grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

### III.  Discussion

In his First Amended Complaint, Cortez asserts three claims under ERISA.  Count I, against only Prudential, alleges a claim pursuant to ERISA § 502(a)(1)(A), 29 U.S.C. §1132(a)(1)(A), for the statutory penalty under ERISA § 502(c), 29 U.S.C. § 1132(c), for failing to timely provide the administrative record and Plan documents after Cortez requested them, through his counsel, pursuant to 29 C.F.R. § 2560.503(h)(2)(iii).  Count II alleges a claim against both Prudential and the Plan pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), for benefits under the Plan.  Finally, Count III alleges a claim against Steelcase, Prudential, and the Plan pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), for retirement benefits based upon Steelcase's failure to place Cortez in retirement status after Prudential determined that Cortez was permanently and totally disabled as of November 26, 2003.  Prudential contends that it is entitled to summary judgment on each claim.

#### A.   Claim for Statutory Penalty

Cortez' claim in Count I is based upon § 502(c)(1) of ERISA, which provides, in relevant part:

> (1) Any administrator . . . (B) who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator), by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such

4

>failure or refusal, and the court may in its discretion order such other relief as it deems proper. . . .

29 U.S.C. § 1132(c)(1). Pursuant to ERISA § 104(b)(4), a plan administrator shall, "upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description . . . and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4).

Prudential contends that it is entitled to summary judgment on this claim for two reasons. First, it argues that it cannot be held liable for statutory penalties under § 1132(c) because it is not the Plan administrator, and Sixth Circuit precedent holds that only a plan administrator can be liable for statutory penalties under Section 1132(c). Second, it contends that this claim fails because Cortez requested copies of the administrative record pursuant to the Department of Labor's ERISA regulation, 29 C.F.R. § 2560.503-1(h)(2)(iii), rather than copies of plan documents pursuant to 29 U.S.C. § 1024(b). Prudential is correct on both scores.

The Sixth Circuit has repeatedly held "that only plan administrators are liable for statutory penalties under § 1132(c)." *Caffey v. UNUM Life Ins. Co.*, 302 F.3d 576, 584 (6th Cir. 2002) (citing *Hiney Printing Co. v. Brantner*, 243 F.3d 956, 960 (6th Cir. 2001) ("The law in this Circuit is clear that '[o]nly a plan administrator can be held liable under section 1132(c).'") (quoting *VanderKlok v. Provident Life & Accident Ins. Co.*, 956 F.2d 610, 618 (6th Cir. 1992)). *See also Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 843 (6th Cir. 2007) (same). ERISA defines the plan administrator as "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A). Here, the Form 5500 Annual Return/Reports that the Plan filed for years 2002-2006 identify Steelcase as both the Plan Sponsor and Plan

5

Administrator. (Def.'s Br. Supp. Mot. Ex. 3.) Thus, while Prudential functioned as the claims administrator, it was not the Plan administrator for purposes of § 1132(c).

Cortez does not dispute that Steelcase was the Plan Administrator identified in the Plan documents. He argues, however, that no Sixth Circuit case has held that a claims administrator may not be held liable for statutory penalties under § 1132(c) for failing to provide documents in response to a request by a participant or beneficiary pursuant to the ERISA regulation, 29 C.F.R. § 2560.503-1(h)(2)(iii). That regulation states that a plan's claim procedures will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of an adverse benefit determination unless the procedures "[p]rovide that a claimant shall be provided, upon request and free of charge, . . . all documents, records, and other information relevant to the claimant's claim for benefits." Cortez points out that *VanderKlok*, *Hiney Printing Co.*, and *Caffey*, cited above, were all decided prior to 2002, when the amended ERISA regulation became effective, and thus could not have addressed the issue of whether a claims administrator could be liable for the statutory penalty under 29 U.S.C. § 1132(c) for failing to comply with the document production mandate of the regulation.[2]

Cortez fails to cite any authority to support his argument. In fact, courts have rejected similar arguments, on various grounds, for extending liability under § 1132(c) to violations of the regulations. For example, recently, in *Sgro v. Danone Waters of North America, Inc.*, 532 F.3d 940, 944-46 (9th Cir. 2008), the Ninth Circuit held that MetLife, the claims administrator for the ERISA plan at issue, could not be liable under § 1132(c) because it was not the plan administrator, as required by that court's "longstanding interpretation of section 1132(c)(1)." *Id.* at 945. The court rejected the plaintiff's argument that the amended regulation overruled this interpretation, noting that

---

[2]Cortez' argument on this point is not entirely accurate, because *Caffey* was decided on September 3, 2002, after the amended regulation became effective.

6

"nothing in the amendments to the regulation broadened the meaning of the word 'administrator' in section 1132(c)(1) to include additional parties. The amendments merely broadened administrators' duties . . . ." *Id.* Thus, the court held, the plaintiff could only sue the plan administrator to recover the statutory penalty. *See id.* Similarly, in *Ranke v. Sanofi-Synthelabo, Inc.*, No. Civ. A. 04-1618, 2004 WL 2473282 (E.D. Pa. Nov. 3, 2004), the court held that an ERISA plan cannot be held liable under § 1132(c) for its violations of the ERISA regulation, because the regulation and ERISA § 503(2), 29 U.S.C. § 1133(2), pursuant to which the regulation is promulgated, impose duties only on plans, whereas the penalties imposed by § 1132(c) are limited to plan administrators. *See id.* at *7 (stating that "Plaintiffs cannot seek § 502(c) penalties for violation of § 503(2), because this subsection (albeit within subchapter 1) imposes duties only on plans"). *See also Addison v. Hartford Life & Accident Ins.*, No. 1:03-CV-172, 2003 WL 23413737, at *4 (E.D. Tenn. Dec. 12, 2003) (concluding that a violation of 29 U.S.C. § 1133 and its implementing regulation is not ground for imposition of the penalty under § 1132(c)). Furthermore, other courts, also supporting Prudential's second argument, have held that a failure to provide the information specified in the regulation cannot support a claim for statutory penalties under § 1132(c) because the information specified in the regulation is not the information referenced in § 1132(c)(1) or 29 U.S.C. § 1024(b)(4). *See Disanto v. Wells Fargo & Co.*, No. 8:05-CV-1031-T-27MSS, 2007 WL 2460732, at *16 (M.D. Fla. Aug. 24, 2007); *Brucks v. Coca-Cola Co.*, 391 F. Supp.2d 1193, 1211-12 (N.D. Ga. 2005).

The Court agrees with the reasoning of these cases and concludes that even if Prudential violated the regulation, 29 C.F.R. § 2560.503-1(h)(2)(iii), or 29 U.S.C. § 1133(2), which authorizes the regulation, such violation would not give rise to a claim for statutory penalties under § 1132(c) because the regulation does not expand the application of § 1132(c) beyond plan administrators. Moreover, the information specified in the regulation is not the information specified in § 1132(c).

7

Cortez raises one additional argument based upon the *de facto* plan administrator theory of liability adopted by the First, Fifth, and Eleventh Circuits in *Law v. Ernst & Young*, 956 F.2d 364 (1st Cir. 1992), *Fisher v. MetLife*, 895 F.2d 1033 (5th Cir. 1990), and *Rosen v. TRW*, 979 F.2d 191 (11th Cir. 1992). The Court need not devote any substantial analysis to this argument, however, because the law in the Sixth Circuit is that only plan administrators can be held liable for statutory penalties under § 1132(c). *See Addison*, 2003 WL 23413737, at *3 (rejecting the plaintiff's reliance on *Law* to hold the insurer-claims administrator liable for acting the plan administrator, in light of the Sixth Circuit rule that only plan administrators may be held liable under § 1132(c)). In *Webb v. Cariten Insurance Co.*, 188 F. App'x 391 (6th Cir. 2006), the court affirmed the Sixth Circuit's adherence to this rule, especially where, as here, the plan documents specifically identify the plan administrator. *See id.* at 394-95. Accordingly, Prudential is entitled to summary judgment on this claim.

**B.     Claim for Benefits Under the Plan**

Prudential moves for summary judgment on Count II – a claim against Prudential and the Plan for group life insurance benefits under the Plan. Prudential asserts that it is entitled to summary judgment because a claim for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) may be brought only against the Plan or against the entity that controls the administration of the plan. *See Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1998). Prudential has submitted evidence showing that it is no longer responsible for administering the Plan because its group life insurance contract with Steelcase terminated on March 1, 2008, and Steelcase stopped paying premiums for coverage after that date. (Coan Decl. ¶¶ 3, 4, Def.'s Br. Supp. Ex. 4.) Prudential's claims administration services ended as of that date, and Prudential no longer provides services of any type to Steelcase. (*Id.* ¶¶ 5, 6.) Prudential contends that it is not a proper party to an action for benefits under the Plan because the

8

group life insurance contract is no longer in force and Prudential is no longer involved with the Plan, thus, Prudential cannot provide coverage or benefits to Cortez. *See Hall v. LHACO, Inc.*, 140 F.3d 1190, 1196 (8th Cir. 1998) ("Only the Plan and the current plan administrator can pay out benefits to Hall. . . . LHACO, even if it once was the plan administrator for Hall's Plan, is no longer in that capacity, and thus cannot be enjoined to make payments of benefits from the Plan."); *Parelli v. Bell Atlantic-Pennsylvania*, No. 98-3392, 1999 WL 1060706, at *4 (E.D. Pa. Nov. 22, 1999) (holding that once the employer assigned its duties and responsibilities to the benefits committee, it no longer retained discretionary control over the plan and thus was not a proper party in an ERISA claim for benefits).

Cortez, having reviewed Prudential's exhibits, concedes that Prudential is not a proper defendant in a claim for benefits under the Plan. (Pl.'s Resp. Br. at 8 ("Obviously, as plaintiff is still alive, his designated beneficiary will not now be able to recover any future death benefit under the contract . . . [thus] the march of events since initiation of this litigation has fortuitously immunized Prudential under Count II of the First Amended Complaint.") Accordingly, Count II must be dismissed against Prudential.

### C. Claim for Retirement Benefits

Prudential contends that Cortez' claim for retirement benefits in Count III must be dismissed against Prudential because Prudential has no connection, nor has it ever had any connection, with Steelcase's retirement plan. (Coan Decl. ¶ 8; Form 5500 Annual Return/Reports for years 2002-2006, Def.'s Br. Supp. Ex. 5.) Prudential notes that it cannot provide any of the relief that Cortez requests in Count III. Thus, it argues, it is not a proper defendant in a claim for retirement benefits.

In response, Cortez argues that Prudential is a proper defendant because Steelcase, the plan administrator of the retirement plan, relied upon Prudential's determination as the carrier of the

9

group life insurance policy as to Cortez' status as permanently and totally disabled. Steelcase then used this determination for providing benefits under the retirement plan. Although Cortez appears to concede that Prudential has no liability for retirement benefits, he asserts that it is possible that Steelcase may seek to "pass the buck" to Prudential by claiming that Cortez' real complaint is with Prudential. Cortez suggests that the Court should therefore defer its ruling on this aspect of Prudential's motion until the Rule 16 conference to allow Steelcase to assert any cross-claim that it may have against Prudential.

The Court declines to adopt Cortez' suggestion. Prudential's motion is based upon the ground that Cortez has no claim against Prudential for retirement benefits. Cortez appears to concede this point, but in any event offers no reasoned basis for concluding that Prudential is a proper defendant in his claim for retirement benefits. Whether Steelcase intends to assert any type of claim against Prudential is unclear, but regardless of its intent, there is simply no basis to delay dismissal of Count III against Prudential.

## IV. Conclusion

For the foregoing reasons, the Court will grant Prudential's motion in its entirety.

An Order consistent with this Opinion will be entered.


Dated: September 19, 2008                     /s/ Gordon J. Quist
                                              GORDON J. QUIST
                                              UNITED STATES DISTRICT JUDGE